**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:09CR457 |
| | ) | |
| | ) | **DEFENDANT'S BRIEF IN SUPPORT** |
| **Plaintiff,** | ) | **OF HIS MOTION FOR DEPARTURE** |
| | ) | **DEVIATION OR VARIANCE FROM** |
| vs. | ) | **THE SENTENCING GUIDLINES** |
| | ) | |
| DANIEL BOUQUET, | ) | |
| | ) | **Senior Judge Strom** |
| **Defendant.** | ) | **Magistrate Judge Gossett** |

Mr. Bouquet's case falls outside of the "heartland" of drug-trafficking offenses and warrants a sentence of no more than 18 months for several reasons.  First, Mr. Bouquet's extensive and substantial assistance to the federal authorities, provided at great personal risk to him, demonstrates the fairness of a less than 18-month sentence and support the government's anticipated decision to move for a departure or Rule 35 Sentence reduction.

Second, Mr. Bouquet's physical health and limited life expectancy plus his unique family responsibilities warrants a further downward departure under U.S.S.G. §§ 5H1.4 and 5H1.6.  Mr. Bouquet's frail physical condition also makes the advisory Guidelines range radically excessive under the parsimony provision of § 3553(a)(2).

Finally, Mr. Bouquet's age and lack of multiple criminal history points places him at an extremely low risk of recidivism.  For these reasons, a sentence of no more than 18 months is appropriate.

    **A. The United States Sentencing Guidelines are Advisory.**

The Sentencing Guidelines are no longer mandatory.  *United States v. Booker,* 543 U.S. 220, 260-61 (2005).  Since *Booker,* the Supreme Court has consistently and significantly

broadened the range of choices in sentencing dictated by the facts of the case. *See Gall v. United States,* 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *see also: Kimbrough v. United States,* 128 S. Ct. 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); and *Cunningham v. California*, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer bound by the Guidelines, but are required to consider them along with the sentencing goals in 18 U.S.C. § 3553(a)). These cases – *Booker*, *Gall*, *Kimbrough*, *Rita*, and *Cunningham* – "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 128 S. Ct. at 577 (Scalia, J., concurring).

The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 128 S. Ct. at 597. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court has rejected, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

While sentencing courts must continue to *consider* the sentencing Guidelines, Congress has *required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory Guidelines range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a); *see also Kimbrough*, 128 S. Ct. at 570. The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." This requirement is not just another factor to be considered along with the others set forth in Section 3553(a) — it sets an independent limit upon the sentence.

### B. The Drug-Trafficking Guidelines are Not Supported by an Empirical Basis and, Therefore, Warrant Less Deference Than Other Guidelines Provisions.

Congress established the Sentencing Commission "to formulate and constantly refine national sentencing standards." *Kimbrough,* 128 S. Ct. at 574; *see also Rita,* 127 S. Ct. 2464. In its institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 128 S. Ct. at 574, (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); *see also Gall,* 128 S. Ct. at 594

(noting that "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.").

However, when Guidelines are *not* the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based upon an empirical approach, but are instead keyed to or guided by statutory directives, the sentencing court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 128 S. Ct. at 574 (*quoting Rita,* 127 S. Ct. at 2465); *see also Gall,* 128 S. Ct. at 594, n.2 (noting that not all Guidelines are tied to empirical evidence).  In cases where the Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that the application of the Guidelines "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 128 S. Ct. at 575*; see also United States v. Baird*, 2008 U.S. Dist. LEXIS 2338 at *10 (D. Neb. Jan. 11, 2008) (Bataillon, J.).

In light of its "discrete institutional strength[ ], a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge 'finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *Kimbrough,* 128 S. Ct. at 575 (*quoting Rita,* 127 S. Ct. at 2465).  A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals

court and is "therefore 'in a superior position to find facts and judge their import under § 3553(a)' in each particular case." *Kimbrough,* 128 S. Ct. at 574 (*quoting Gall,* 128 S. Ct. at 597).

The Guidelines were thus developed to advance certain sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment.  *See,* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) ("Fifteen-Year Assessment") (available at www.ussc.gov/research.htm).  The Sentencing Commission was originally charged by Congress with developing Guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation.  *Id.* at 12-13.  Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines.  *See id.* at 14 (noting that the Guidelines are based in part upon statistical analyses of pre-Guidelines sentencing practices); *see also* U.S.S.G. § 1A1.1, intro. comment., pt. A, P 3; *see also Kimbrough,* 128 S. Ct. at 567 (regarding drug trafficking Guidelines).  Based upon this data, the Commission created offense levels for each crime and linked each to a recommended imprisonment range.  Fifteen-Year Assessment at 14.

Policy reasons and statutory mandatory minima, however, compelled the Commission to depart from its past practices in setting offense levels for fraud, drug trafficking, and child exploitation and sexual offenses.  *Id.* at 15, 72-73; *Kimbrough*, 128 S. Ct. at 567.  Consequently, the Guidelines ranges for those crimes are a less-reliable appraisal of a fair sentence.  *See Kimbrough,* 128 S. Ct. at 574; *see also United States v. Baird*, 2008 U.S. Dist. LEXIS 2338, at

*17-*19 (unpub.) (D. Neb Jan. 11, 2008). Accordingly, this Court, while it must consider the Guidelines, need not feel constrained by them – particularly when the Court is confronted with a unique case.

### C. Confinement for No More Than 18 Months Would Be Sufficient, But Not Greater Than Necessary, to Comply with the Requirements of 18 U.S.C. § 3553(a).

This is a unique case.

1. The History and Characteristics of Daniel Bouquet.

Mr. Bouquet is 53 years old. He has two dependent children with his fiancé of 21 years: son, Kyle, who is 16 years old and his daughter, Kaitlynn, who is 9 years old. Both children live with their parents here in Omaha. Before pleading guilty to the instant offenses, Mr. Bouquet had only been convicted of a single criminal offense relevant for Guideline Purposes – possession of marijuana less than 1 ounce, for which he received a $100 fine.

As noted by ¶ 70 of the Revised Presentence Investigation Report ("RPSR"), the Defendant has been totally disabled for over three years. Both Mr. Bouquet and his fiancé receive Social Security Benefits and are considered 100% disabled. Their SSA benefits provide the sole support for their two children.

For the purposes of both (1) arriving at the proper advisory Guidelines range and (2) determining a sentence sufficient, but not greater than necessary, to comply with the requirements of § 3553(a), two aspects of the history and characteristics of Mr. Bouquet demand scrutiny: his cooperation and his health. Consideration of this substantial cooperation supports a downward departure in terms of the advisory Guidelines range under U.S.S.G. § 5K1.1.

Consideration of Mr. Bouquet's health supports a downward departure in terms of the advisory Guidelines range under U.S.S.G. § 5H1.4.  Both of these factors support a below-Guidelines sentence under 18 U.S.C. §§ 3553(a) and 3553(e).

    a.  <u>Mr. Bouquet's Cooperation</u>.

Mr. Bouquet's cooperation with law enforcement began almost immediately after his arrest.  Within days of his initial appearance, Mr. Bouquet, through counsel, sought out the possibility of cooperation and he agreed to be interviewed by law enforcement.  Mr. Bouquet was forthcoming with the agents and admitted guilt almost instantly. He provided useful information concerning the three trips which he was directly involved in the transport of marijuana from Tucson, Arizona to Omaha, Nebraska.

Since his arrest, Mr. Bouquet has been interviewed by local law enforcement and the United States Attorney's Office several times and testified at length before the jury in the Shannon Williams trial.  During these interviews and at trial, Mr. Bouquet candidly discussed his criminal conduct with the government and has provided the identities of people involved in criminal activity, including interstate drug trafficking.  Notably, Mr. Bouquet participated in these interviews prior to any plea agreement and testified at trial without the benefit of a cooperation plea agreement.

Accordingly, upon the government's anticipated § 5K1.1 motion, the Court should first depart downwardly under U.S.S.G. § 5K1.1.  Given the extent of Mr. Bouquet's cooperation and the risk involved, the percentage of this downward departure should be no less than 75% and should be applied to the original Guidelines range of 46 months (as opposed to the mandatory

minima).  Following this first departure § 5K1.1, the Court should find a new advisory range of 12 to 18 months (25% of 46 to 57 months).

      b.  <u>Mr. Bouquet's Health/Family Ties and Responsibilities</u>.

Mr. Bouquet's health warrants a further downward departure under U.S.S.G. § 5H1.4. Section 5H1.4 provides that a departure may be warranted in cases of "extraordinary physical impairment." In addition, Mr. Bouquet's family responsibilities warrant a departure under U.S.S.G. § 5H1.6.

As a result of his extremely poor heath, Mr. Bouquet has applied for and received 100% disability benefits from the Social Security Administration.  It is also of note that Mr. Bouquet's fiancé is also 100% disabled as far as SSA benefits are concerned.  A "spouse's" health is a relevant factor when the Court considers the necessity for providing the care of the couple's two dependent minor children if Mr. Bouquet were to be incarcerated for a significant period of time. See, § 5H1.6.

The medical records provided previously to the United States clearly show Mr. Bouquet's poor physical health including several strokes which have left Mr. Bouquet significantly and permanently disabled.

The fact of Mr. Bouquet and his fiancés' total disability and the fact that the SSA benefits which both receive provide the sole financial support for their two minor children warrants a further departure consideration under U.S.S.G. § 5H1.6.

It is Mr. Bouquet's contention that each of the qualifying circumstances are met under the Commentary to § 5H1.6, to wit:

  i. The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
  ii. The loss of the caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.
  iii. The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
  iv. The departure effectively will address the loss of caretaking or financial support.

Mr. Bouquet's health and family responsibilities clearly qualify him for a further departure under the Guidelines as noted.

2. The Nature of the Offenses

The nature of the offense is straightforward. In support of his drug habit and to assist with mounting debt, Mr. Bouquet conspired to distribute (agreed to transport) 400 to 700 kilograms of marijuana. He received approximately $3,500 for each of the 3 trips he made from Tucson to Omaha.

3. The Advisory Guidelines Range

The original total offense level in Mr. Bouquet's case for Count I is 23, creating an advisory Guidelines range of 46 to 57 months, even though the statutory mandatory minimum is 60 months, due to Mr. Bouquet's Safety Valve eligibility.

Following the first departure under § 5K1.1, the Guidelines range should be 75% below the original aggregate Guidelines range (46 to 57 months) or 12 to 18 months in Zone C of the Sentencing Table. Following the second departure under § 5H1.4 and/or § 5H1.6, the Guidelines range should encompass an even lower sentence.

Even if the Court finds these departures inapplicable, the Court should still impose a sentence of 12 to 18 months.  First, the drug-trafficking Guidelines lack an empirical basis and are less reliable than other Guidelines.  Furthermore, even if the Court finds that the drug trafficking Guidelines are reliable, Mr. Bouquet, as a 53-year-old, extremely frail, "first-time offender," however, certainly falls outside the "heartland" of drug trafficking cases.  *See* U.S.S.G. § 5K2.0.

Finally, even if the Court finds Mr. Bouquet's case to fall *within* the "heartland" of drug trafficking cases, in cases where the Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that the application of the Guidelines "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough*, 128 S.Ct. at 575.

    4. Specific Deterrence

Mr. Bouquet poses virtually no risk of recidivism and, accordingly, needs no specific deterrence.  First, for a 53-year-old who has never been incarcerated, any period of confinement will adequately deter him from re-offending.  The incarceration of a man of Mr. Bouquet's age for any length of time represents a substantial loss of remaining life, especially considering Mr. Bouquet's health and prognosis.  Therefore, the deterrent value of any sentence above and beyond 18 months to Mr. Bouquet would be marginal at best.

Second, data accumulated from other federal criminal cases indicates that Mr. Bouquet poses almost no risk of recidivism.  Publications available on the Sentencing Commission's

website reveal that, even beyond criminal history category, criminal history points are an excellent indicator of the risk of recidivism. Specifically, "[a]ll offenders with zero criminal history points have a primary recidivism rate of 11.7 percent. The zero-point offender rate is substantially lower than the recidivism rates for offenders with only one criminal history point (22.6%), or for offenders with two or more points (36.5%) combined in Criminal History Category II through Criminal History Category VI."[a]  Mr. Bouquet's one criminal history point total places him very close to the category of offenders who have the lowest risk of recidivism.

Mr. Bouquet's age also places him at low risk of recidivism.  The Sentencing Commission reports that Category I individuals who are over the age of 50 at the time of sentencing have a recidivism rate of only 6.2 %.[b]  Mr. Bouquet's risk of recidivism is thus nearly 80% lower than that of those Category I offenders who are 21 years old or younger at the time of sentencing.

## CONCLUSION

A sentence of no more than 18 months is appropriate in this case.  Accordingly, Mr. Bouquet respectfully requests that this Court impose a sentence of no more than 18 months of incarceration, or to an alternative sentence in Zone C or B of the United States Sentencing Guidelines.

---

[a] - *Recidivism and the "First Offender,"* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) at 13-14 (available at HTTP://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf)

[b] - *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) at 28 of 38.

Dated this 8th day of July, 2011.

                          RESPECTFULLY SUBMITTED,

                          DANIEL BOUQUET, Defendant

BY:    **/s/Mark A. Weber**_____
         Mark A. Weber, NSBA #18666
         Walentine, O'Toole,
              McQuillan & Gordon
         P.O. Box 540125
         11240 Davenport Street
         Omaha, NE 68154-0125
         (402)-330-6300
         Fax (402)330-6303
         maweber@womglaw.com

         Attorneys for Defendant Daniel Bouquet

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 8th, 2011, I electronically filed the foregoing Brief with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record on the CM/ECF system for the captioned case, including the following AUSA:

**Susan T. Lehr**
ASSISTANT UNITED STATES ATTORNEY - OMAHA
1620 Dodge Street
Suite 1400
Omaha, NE 68102-1506
susan.lehr@usdoj.gov

                          **/s/Mark A. Weber**_____
                          For the Firm